Thomas Abatico v. Commissioner.
Abatico v. Commissioner
Docket No. 22023.
United States Tax Court
1951 Tax Ct. Memo LEXIS 214; 10 T.C.M. (CCH) 526; T.C.M. (RIA) 51163; May 31, 1951
*214 Held, petitioner is liable as a transferee of a certain corporation for taxes, including "additions to the tax" or penalties, determined against such corporation. John O. Durkan, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined that petitioner is liable as a transferee for the following deficiencies and penalties due from Turf and Field, Inc.: Deficiencies
Penalties
Declared
Value Excess-
Excess
Fraud
Delinquency
Year
Income Tax
Profits Tax
Profits Tax
(50%)
(25%)
1945
$2,850.86
$2,642.03
$14,059.84
$9,776.37
$3,514.96
1946
2,861.23
1,430.62
At the hearing petitioner did not appear either by counsel or in person nor has he filed a brief or otherwise taken notice of the hearing. Findings of Fact Turf and Field, Inc., hereinafter sometimes referred to as the "corporation" was incorporated in Ohio in 1937 and at all times material to this proceeding, operated a cafe and bar in Cincinnati, Ohio. Thomas Abatico, hereinafter sometimes referred to as the "petitioner", is an individual residing in Cincinnati, Ohio. On October 10, 1945, he *215 purchased the capital stock of the corporation and, in 1946, became its president. The corporation filed Federal income and declared value excess-profits tax returns for the calendar years 1945 and 1946 wherein it reported the following net incomes and tax liabilities: Declared
Net Income
Income
Value Excess-
Year
or (Loss)
Tax
Profits Tax
1945
[1,266.59
1946
6,160.82
$1,316.99
The corporation did not file an excess-profits tax return for the calendar year 1945. The corporation filed its tax returns for the calendar years 1945 and 1946 on the basis of cash receipts and disbursements and elected to value inventories at the lower of cost or market. The net income reported by the corporation for the calendar year 1945 was understated in an amount in excess of $30,000. The corporation filed a false and fraudulent profit and loss statement for the calendar year 1945 with the Office of Price Administration (O.P.A.) in order to increase the selling prices of its food and liquor. This statement disclosed $9,882.31 less net income than the corporation had recorded on its books of account. To be consistent with this action, the corporation prepared *216 its Federal income tax return for 1945 from a copy of the false statement filed with O.P.A., thereby reporting $9,882.31 less than the income recorded on its books of account. On October 30, 1945, the corporation paid $642 in satisfaction of a loan. Instead of charging the payment to the loan account on its books of account, the corporation charged this payment to whiskey purchases, thereby understating its 1945 income in that amount. In November 1945, the corporation purchased kitchen equipment at a total cost of $1,839.30. This equipment had a useful life of 10 years. Instead of charging the expenditure to its capital account, the corporation charged it to expense on its books of account, thereby understating its income. During the calendar year 1945, the corporation drew checks in a total amount of $1,674 to petitioner, who endorsed and cashed the checks and retained the proceeds for his personal use. The amount of these checks was charged to advertising on the corporation's books of account and deducted on its Federal income tax return for the year 1945. This amount was not expended for advertising, or for any other deductible expense, by or on behalf of the corporation. *217 It was transferred by the corporation to the petitioner without consideration. On October 15, 1945, the corporation drew a check payable to itself for $1,000, which it charged to maintenance expense on its books of account and deducted on its income tax return for that year. This check was endorsed by the company's cashier and the proceeds thereof were given to the petitioner to enable him to purchase a liquor license in his own name so that the corporation could continue to sell liquor. The State of Ohio refused to issue petitioner the license due to the fact that he had violated O.P.A. regulations. The petitioner kept the $1,000 and never accounted for it to the corporation. The corporation subsequently paid for a liquor license by the issuance of another check. The amount of $1,000 was transferred by the corporation to the petitioner without consideration. Petitioner owned and operated, as a sole proprietor, a restaurant in Cincinnati. During the calendar year 1945 petitioner incurred a liability to the State of Ohio for a sales tax in the amount of $333.04. This liability was satisfied by a corporation check in that amount drawn to the State of Ohio and charged on the corporation's *218 books of account. It was deducted on the corporation's tax return. The corporation's inventory of whiskey as of December 31, 1945, as recorded on its books of account and on its Federal tax return for that year, was understated in the amount of $15,183.36. This amount represented the cost of 464 cases of whiskey purchased by the corporation, entered on its books and its Federal tax returns as purchases, and owned by it on December 31, 1945. The corporation's depreciable assets, as reported on its Federal income tax return for 1945, were overstated in the amount of $6,000. The corporation deducted on its Federal income tax return for 1945 depreciation on such non-existent assets in the amount of $727.90. The net income reported by the corporation on its 1946 Federal income tax return was understated in an amount in excess of $12,000. During the calendar year 1946, the corporation drew two checks in the respective amounts of $3,058 and $2,500 to Ike Hyams, which checks were charged to liquor purchases and so reported on its income tax return for the year 1946. These checks were in part payment of promissory notes given by the petitioner to Ike Hyams as consideration for the sale *219 of the corporation's stock by Hyams to the petitioner on October 10, 1945. Hyams never sold liquor to the corporation. During the calendar year 1946 the corporation drew checks payable to the petitioner in the respective amounts of $21.64 and $131.88, and a further check payable to itself of $57.64 which the petitioner endorsed. The proceeds of all three checks were retained by the petitioner. The checks were charged to wine or liquor purchases and so reported on the corporation's income tax return for the year 1946. None of the proceeds of these checks were used by petitioner to purchase wine or liquor for the corporation. All of the above described checks, issued in 1946, in the total amount of $5,769.16, were transferred by the corporation to the petitioner without consideration. During the calendar year 1946 the corporation purchased dishwashing equipment at a total cost of $1,344, which equipment had a useful life of 10 years. The corporation charged the item to expense on its books of account and deducted it on its Federal income tax return for that year, thereby reducing the net income. The corporation deducted the amount of $750, as a loss from theft, on its tax return *220 for 1946. This alleged loss was entered on the corporation's books at the end of 1946. Petitioner was unable to explain to the revenue agent how this money was withdrawn. During the calendar year 1946 the corporation drew several checks to the order of petitioner, or members of his family, in a total amount of $2,325 and charged these checks to advertising or promotion expense on its books of account and deducted them on its Federal income tax return for that year. These checks, in the amount of $2,325, represented a transfer by the corporation to petitioner without consideration. During 1946 the corporation drew several checks in the total amount of $1,400.92 which it charged to food and beverage expense on its books of account and so deducted on its income tax return. All of these checks were drawn to petitioner, or some member of his family, and represented transfers to petitioner without consideration. During the calendar year 1946 the corporation paid $750 to a Cincinnati lawyer for services in representing petitioner in connection with alleged O.P.A. violations in no way connected with the corporation's business. This constituted a transfer to the petitioner without consideration. *221 The corporation deducted depreciation in the amount of $919.88 on its income tax return for the year 1946 as depreciation on the non-existent assets referred to above. The corporation's whiskey inventory as of December 31, 1946, as recorded on its books and reported in its Federal tax return, was understated in the amount of $13,097.92. When petitioner purchased the corporation's stock there was a credit balance in Ike Hyams' personal withdrawal account on the corporation's books of account in the amount of $10,642.42. Petitioner withdrew the aforesaid amount of $10,642.42 from the corporation without consideration during the calendar year 1946. During the calendar year 1947 the corporation realized a net income in excess of $14,000 in addition to that recorded on its books of account, which amount was withdrawn by petitioner from the corporation without consideration. Petitioner borrowed $3,030, which he used in buying the corporation stock from Ike Hyams on October 10, 1945. This loan was repaid by corporation check drawn to the order of one Herbert Johnson during the year 1945. The check was in payment of petitioner's personal obligation and was a transfer by the corporation *222 to petitioner without consideration. The corporation was insolvent at all times during the calendar years 1945, 1946 and 1947. The corporation's failure to file an excess profits tax return for the year 1945 was not due to reasonable cause but was due to willful neglect. The petitioner, as president of the corporation, executed an agreement consenting to the assessment of the deficiencies and penalties determined by the Commissioner to be due from, and owing by, the corporation, and which are here in controversy. Petitioner, as president of the corporation, agreed to the correctness of the aforesaid determination. There are due from, and owing by, the corporation, deficiencies in income, declared value excess profits and excess profits taxes for the calendar year 1945, and income tax for the calendar year 1946, in the respective amounts of $2,850.86, $2,642.03, $14,059.84 and $2,861.23. Each of the deficiencies referred to above is due, in whole or in part, to fraud with intent to evade tax, and there are due from, and owing by, the corporation, in addition to the stated deficiencies, additions to the tax for fraud in the respective amounts of $9,776.37 and $1,430.62. There *223 is an addition to the tax for the year 1945 in the amount of $3,514.96 for delinquency in failing to file an excess profits tax return. These deficiencies and additions to the tax have been assessed against the corporation. None of such deficiencies and additions to the tax have been paid. The petitioner is a transferee of the corporation, and is liable for the deficiencies and additions to the tax above set out. Opinion VAN FOSSAN, Judge: As noted above, the petitioner made no appearance either in person or by attorney at the hearing of this case. The hearing proceeded and respondent made proof of the above found facts. These facts need not be repeated. They establish beyond question that the transferor corporation filed false and fraudulent tax returns for both of the years. The corporation, operating through petitioner as its president, flouted all concepts of right and wrong, of legality and illegality in its operations and dealings with the Government. The presumption of correctness which attaches to respondent's finding of taxes due from the transferor (Section 1119 (a), Internal Revenue Code), having ripened, in the absence of any proof to the *224 contrary, into a conclusive holding by us of the correctness of the deficiencies due from the corporation, and the proof having established the fact of fraud by the corporation in filing its returns, there remains only the question of the transferee liability of the petitioner. The proof of this fact is likewise conclusive and establishes petitioner's liability as a transferee of the assets of the insolvent corporation transferor. It follows that the petitioner is liable as a transferee for the taxes and penalties determined by respondent as being due from the transferor corporation. Decision will be entered under Rule 50.